IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA EX REL. BILL LOCKYER, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>POWEREX CORP., a Canadian Corporation, dba POWEREX ENERGY CORPORATION; PUBLIC SERVICE COMPANY OF NEW MEXICO; and DOES 1-100,<br><br>　　Defendants. | CIV-S-05-01216 DFL DAD<br><br>MEMORANDUM OF OPINION AND ORDER |

　　The Attorney General of California ("Attorney General") filed this action in state court against Powerex Corporation ("Powerex") and the Public Service Company of New Mexico ("PNM") to recover damages for violations of the state antitrust statute. Defendants removed the case to this court on the basis of federal question jurisdiction. The Attorney General now moves to remand.

1

Both defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6).

For the reasons discussed below, the motion to remand is DENIED and the motions to dismiss are GRANTED.

I.

This case is one of many related to the California energy crisis of 2000-2001. The complaint alleges that defendants violated the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 et seq. -- the California analogue of the Sherman Act -- by misrepresenting in-state electricity as higher-priced "out-of-market" ("OOM") energy. The Attorney General alleges that defendants engaged in a scheme, known as "ricochet" or "megawatt laundering," which involved the following series of transactions: (1) Powerex purchased power in California at regular market rates; (2) Powerex exported the power to PNM and the Colorado River Commission ("CRC");[1] and (3) Powerex imported the power back into California and sold it as OOM energy. (Compl. ¶ 32.) Because a price cap on in-state power did not apply to OOM power, the price of OOM power was generally much higher than that of in-state power. (Id. ¶ 31.) Thus, the scheme allegedly enabled defendants to sell power generated in California at a higher price thereby defrauding consumers.[2] (Id. ¶ 33.)

---

[1] Plaintiff alleges that CRC is a co-conspirator in this scheme. However, CRC is not a defendant in this action.

[2] Plaintiff asserts that defendants engaged in thousands of these ricochet transactions. Specifically, plaintiff alleges that defendants exported and imported in the same hour: (1) at

2

By means of this alleged "megawatt laundering" scheme, the Attorney General alleges that defendants combined to restrain trade in violation of the Cartwright Act by: (1) entering into a series of anti-competitive agreements designed to establish a market structure in restraint of trade; (2) engaging in a series of ricochet trades with the intent and effect of increasing the price of electricity in California; (3) engaging in a series of ricochet trades in order to fix, control, and establish the price of electricity in California; (4) misrepresenting the type of electricity being sold in order to collect payments for in-state electricity at OOM prices; and (5) pooling, combining, and uniting their interests in the sale and transportation of electricity to affect its price. (Id. ¶¶ 36-37.) The Attorney General seeks actual and treble damages. (Id. ¶¶ A-D.)

This is not the first time that the Attorney General has made these claims. The Attorney General intervened in a Federal Energy Regulatory Commission ("FERC") proceeding that involved an investigation of Powerex, as well as other energy companies, for megawatt laundering and for antitrust violations during the 2000 and 2001 energy crises. FERC held hearings and issued numerous orders relating to its investigation. See e.g., Fact Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices, Order Directing Staff Investigation, 98 FERC ¶

---

least 158,622 MWh during at least 901 hours between May 2000 and October 2000; (2) at least 184,169 MWh during at least 1,107 hours between October 2000 and January 2001; and (3) at least 463,734 MWh during at least 2,016 hours between January 2001 and June 2001.

3

61,165, 2002 WL 32001559 (Feb. 13, 2002); <u>San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv.</u>, 101 FERC ¶ 61,186, 2002 WL 31973795 (Nov. 20, 2002); <u>San Diego Gas & Elec. Co. v. Sellers of Energy and Ancillary Serv.</u>, 96 FERC ¶ 61,120, 2001 WL 1704964 (Jul. 25, 2001); <u>Am. Elec. Power Serv. Corp et al.</u>, 103 FERC ¶ 61,345, 2003 WL 21480252, *20 (Jun. 25, 2003); <u>Investigation of Anamalous Bidding Behavior and Practices in Western Markets</u>, 103 FERC ¶ 61,347, 2003 WL 21480250, *5 (Jun. 25, 2003); <u>Enron Power Mktg., Inc., et al.</u>, 103 FERC ¶ 61,346, 2003 WL 21480248 (Jun. 25, 2003). Among other things, the investigation resulted in a settlement agreement between FERC and Powerex, under which Powerex agreed to pay $1,300,000 to the United States Treasury. See <u>Powerex Corp.</u>, 106 FERC ¶ 63,019, 2004 WL 346501, at *65158 (Feb. 24, 2004). FERC and Powerex also released a Joint Explanatory Statement in which FERC stated, in part, that "Powerex's transactions are within the Commission's exclusive jurisdiction over wholesale electricity rates." (<u>See</u> Powerex RJN Ex. 5 at 3.) The Attorney General of California objected to the settlement agreement, but FERC approved it over this objection. See <u>Powerex Corp.</u>, 106 FERC ¶ 61,304, 2004 WL 615694, at *62195 (Mar. 26, 2004).

## II. Motion to Remand

The jurisdictional issues in this case are complex; however, the court has the benefit of several decisions of the Ninth Circuit that address many of the same issues presented here. See <u>Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. Idacorp,</u>

4

Inc., 379 F.3d 641 (9th Cir. 2004) ("Grays Harbor"); Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg. Co., 384 F.3d 756 (9th Cir. 2004), cert. denied, 125 S.Ct. 2957 (2005) ("Snohomish"); California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831 (9th Cir. 2004), cert. denied, 125 S.Ct. 1836 (2005) ("Dynegy").  Despite minor differences in pleading and claim, the Ninth Circuit has repeatedly found that the kind of claim brought here by the Attorney General raises a question of federal law within the exclusive jurisdiction of FERC such that the claim is within the subject matter jurisdiction of the federal court.

The complaint here rests solely on the state antitrust statute, and, therefore, would not be removable unless the "artful pleading doctrine" applies.  The artful pleading doctrine keeps a plaintiff from "defeat[ing] removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 22, 103 S.Ct. 2841 (1983).  The doctrine "allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacteriz[ing] a plaintiff's state-law claim as a federal claim." Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotations and citations omitted). Under the artful pleading doctrine, federal question jurisdiction will be found as to state law claims that are: (1) "completely preempted" by federal law; (2) necessarily federal in character; or (3) dependant on the resolution of a substantial, disputed federal question.  Lippitt,

5

340 F.3d at 1041-42; see also Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg., __ U.S. __, 125 S.Ct. 2363, 2368 (2005) ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

Powerex and PNM assert that the court has subject matter jurisdiction under the artful pleading doctrine because plaintiff's right to relief depends on the resolution of a substantial, disputed federal question.[3] (Powerex Opp'n at 3.) To make out a Cartwright Act claim, plaintiff must show: (1) the formation and operation of a conspiracy; (2) that the conspirators acted illegally; and (3) that the conspirators caused an injury. G.H.I.I. v. MTS Inc., 147 Cal.App.3d 256, 265 (1983). The court has subject matter jurisdiction if the resolution of "some substantial disputed question of federal law is a necessary element" of plaintiff's Cartwright Act claim. Grable & Sons, 125 S.Ct. at 2366-67.

Defendants assert that federal jurisdiction is proper because the Attorney General cannot prove the injury component of a Cartwright Act claim without determining a hypothetical

---

[3] Powerex and PNM also assert that the court has subject matter jurisdiction because the Cartwright Act claim is necessarily federal in character and the Federal Power Act completely preempts state law. (Powerex Opp'n at 7,8.) Because the court finds that jurisdiction lies on the basis of a substantial federal questions, it is not necessary to address the other two suggested bases for jurisdiction.

6

reasonable rate for wholesale electricity.  (Powerex Opp'n at 3; PNM Opp'n at 3-4.)  Defendants argue that if there was an illegal conspiracy, damages can only be determined by calculating what the rate would have been in the absence of such a conspiracy. And, the argument continues, this is a calculation that only FERC can make and that presents a substantial, disputed federal question under the Federal Power Act ("FPA").  (Id. (citing 16 U.S.C. § 824e; Grays Harbor, 379 F.3d at 647, 653).)

During oral argument, the Attorney General conceded that any claim which required determining a reasonable rate for wholesale electricity would be precluded by Grays Harbor and Snohomish. Because the complaint is fairly read to require this kind of determination,[4] the court finds that the complaint as drafted presents a substantial, disputed federal question and that the removal was appropriate.

However, having made the concession, the Attorney General

---

[4] For example, the complaint states: "Defendants . . . manipulated the market . . . in order to restrain trade and fix and maintain the price for electricity in California at artificially high levels" (Compl. ¶ 1); "This manipulation of the supply of electricity caused the price to rise, and Powerex was able to sell it back into the California market at these higher prices" (Id. ¶ 2); "During the Relevant Period, Defendants and CRC undertook several steps . . . to achieve supercompetitive profits from the market for electricity in California. Defendants did, in fact, make supercompetitive profits from their market manipulation" (Id. ¶ 29); "As a direct result of this manipulation, California customers were overcharged over a billion dollars during the Relevant Period" (Id. ¶ 34); and "The conspiracy caused disruptions in the ISO grid, power shortages, and higher prices during the Relevant Period.  In consequence of these acts, these higher prices for electricity were ultimately passed on to California consumers" (Id. ¶ 38).

7

then offered to narrow the complaint by proceeding only on the theory that defendants misrepresented in-state power as OOM power.  According to the Attorney General, this theory of recovery does not require hypothesizing a reasonable rate for wholesale electricity because damages could be calculated by using the historical fixed prices for OOM and in-market energy during the relevant time periods.  However, the Attorney General's proposed narrowing simply shifts the substantial issue of federal law from determining the rate to classifying the power.  Under the Attorney General's proposed narrowed complaint, the fundamental issue becomes whether defendants sold in-state power at OOM rates.  Although the Ninth Circuit has not directly addressed the question of whether the classification of the power is equivalent to the determination of a reasonable rate, logic suggests that the inquiries are just different sides of the same rate determination coin: A reasonable rate determination necessarily requires classification of the power.  Thus, classification of the power sold by defendants here, whether as in-state or OOM – which will be the critical factual issue in the case – would seem to fall under the same case law applying to the determination of a reasonable rate.

Moreover, even if power classification were somehow different than rate determination, FERC has broad and exclusive control over every aspect of the sale and transmission of wholesale energy.  See, e.g., Grays Harbor, 379 F.3d at 646 (quoting New England Power Co. v. New Hamphsire, 455 U.S. 331,

340 (1982) (finding that Congress assigned to FERC the "exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce")); FPC v. S. Cal. Edison Co., 376 U.S. 205, 215-16, 84 S.Ct. 644 (1964) (holding that by enacting the FPA, Congress intended to "draw a bright line easily ascertained, between state and federal jurisdiction . . . making [FERC] jurisdiction plenary and extending it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the States"). And FERC's authority over interstate sales of power is not limited to rate setting: "our cases specifying the nature and scope of exclusive FERC jurisdiction make clear that the interstate 'transmission' or 'sale' of wholesale energy pursuant to a federal tariff – not merely the 'rates' – falls within FERC's exclusive jurisdiction." Dynegy, 375 F.3d at 851. Thus, classification of the power is within FERC's exclusive jurisdiction and, therefore, presents a substantial, disputed issue of federal law.

In sum, under the Attorney General's narrowed theory, the fundamental question in this case is whether defendants sold in-state energy at OOM rates. This issue involves a substantial federal question because under the case law and the FPA, FERC has the exclusive authority to decide whether power is or is not in-state or OOM and whether a given quantity of wholesale electricity can be legally sold at OOM rates. See generally Dynegy, 375 F.3d at 851; Snohomish, 384 F.3d at 762; Grays Harbor, 379 F.3d at 647-48 (discussing the plenary authority of

FERC over wholesale electricity sales); 16 U.S.C. § 824e(a) (providing FERC with the authority to set "any rate, charge, or classification" of any "transmission or sale" of electricity). As a result, the court has subject matter jurisdiction over the Cartwright Act claim even if the Attorney General's theory does not require the determination of a hypothetical reasonable rate. For all of the reasons, the motion to remand is DENIED.[5]

### III.  Motions to Dismiss

Powerex and PNM assert that plaintiff's claim is barred by field preemption and should be dismissed.  Under field preemption, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is preempted." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615 (1984).  "Preemption of state law 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" Transmission Agency of Cal. v. Sierra Pac. Power Co., 295 F.3d 918, 928 (9th Cir. 2002) (quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305 (1977)).

The Attorney General argues that the Cartwright Act claim is not preempted because: (1) the FPA does not preempt antitrust laws; and (2) the complaint does not challenge the reasonableness of any FERC-approved rates.  For many of the same reasons discussed above in relation to removal, plaintiff's arguments are

---

[5] Defendants also rest removal on the Foreign Sovereign Immunities Act.  There is no need to address that theory.

10

unpersuasive.

A.   <u>Preemption of State Antitrust Laws</u>

To support its argument that the FPA does not preempt state antitrust laws, the Attorney General contends that: (1) Congress did not express a clear intent to regulate all transactions in the wholesale energy market; and (2) the FPA does not preempt claims under the Sherman Act and therefore does not preempt claims under the State's antitrust statute.

Plaintiff's first argument is squarely defeated by several prior cases, including <u>Dynegy</u>, <u>Grays Harbor</u>, <u>Snohomish</u>, <u>FPC v. S. Cal. Edison</u>, and <u>New England Power</u>.  As discussed above, these cases declare unequivocally that Congress intended to give FERC exclusive jurisdiction over the sale of wholesale electricity. Therefore, this argument fails.

Plaintiff's second argument is equally unpersuasive.  The Supreme Court's holding that the FPA does not supersede the Sherman Act, <u>see</u> <u>Otter Tail Power Co. v. United States</u>, 410 U.S. 366, 374-75 (1973), does not help the Attorney General in this case because he has brought suit under the Cartwright Act. Although the Cartwright Act is based on the Sherman Act, it is not federal law, therefore the analysis involving the Sherman Act does not apply, and the Ninth Circuit has already found that similar Cartwright Act claims are barred by field preemption. <u>See</u> <u>Snohomish</u>, 384 F.3d at 761-62.[6]  Because federal law

---

[6] The Attorney General argues in the alternative that the Cartwright Act claim is not preempted because the claim does not

11

exclusively occupies the field of wholesale energy sales, plaintiff's Cartwright Act claim must be dismissed under the doctrine of field preemption.

### III.

For the reasons stated above, the court DENIES plaintiff's motion to remand and GRANTS defendants' motions to dismiss. The Clerk shall enter judgment in accordance with this order.

IT IS SO ORDERED.

Dated: April 13, 2006.

/s/ David F. Levi
DAVID F. LEVI
United States District Judge

---

challenge the reasonableness of a rate. This is the same issue addressed already with respect to removal and is no more persuasive in this context. To succeed on the Cartwright Act claim, the Attorney General must prove that the energy sold as OOM power was actually in-state power. But this characterization rests exclusively with FERC.